**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emerald Equities LLC, et al.,<br><br>　　　　　Appellants,<br><br>vs.<br><br>Sonoran Desert Land Investors LLC, et al.,<br><br>　　　　　Appellees. | No. CV-18-04467-PHX-SPL<br><br>**ORDER** |

　　　　Appellant Emerald Equities, LLC ("Emerald") initiated this appeal of several orders issued by the U.S. Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"). (Doc. 1) Appellant CPF Vaseo Associates, LLC (together with Emerald, the "Appellants") initiated a separate appeal of the same Bankruptcy Court orders, and the two appeals were consolidated into one case before the Court. (Doc. 12) Sonoran Desert Land Investors, LLC, Gray Phoenix Desert Ridge II, LLC, East of Epicenter, LLC, Gray Phoenix Desert Ridge I, LLC, R.O.I. Properties, LLC, and Bruce Gray (collectively, the "Appellees") have moved to dismiss this appeal (the "Motion"). (Docs. 15, 22) The Court's ruling is as follows.

**I.　Background**

　　　　In May 2016, Epicenter Partners LLC and Gray Meyer Fannin LLC filed voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code. (Doc. 15 at 6) In July 2016, Sonoran Desert Land Investors, LLC, East of Epicenter, LLC, and Gray

Phoenix Desert Ridge II, LLC filed voluntary petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code. (Doc. 15 at 7) The Bankruptcy Court jointly administered the cases. (Doc. 15 at 7)

CPF Vaseo Associates, LLC ("CPF") proposed a joint plan of reorganization (the "Plan") which would create separate liquidating trusts for each group of debtors. (Doc. 15 at 7) The debtors would then sell their real estate assets and deposit the proceeds of those sales into the liquidating trusts in order to pay their creditors. (Doc. 15 at 7) Furthermore, Section 6.7 of the Plan contemplated that a certain piece of property (the "GBSRP I Property") would be transferred to Emerald and that Emerald would have the opportunity to negotiate the price of the GBSRP I Property with the entity in charge of the liquidating trusts. (Doc. 21 at 4–5) On May 1, 2018, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan, and the effective date of the Plan was May 7, 2018. (Doc. 20 at 3) The Appellants did not contest confirmation of the Plan or Confirmation Order. (Doc. 15 at 8)

On the effective date, the liquidating trusts were created, the debtors' property was transferred to the liquidating trusts, and a trustee (the "Trustee") was appointed to administer the trusts.[1] (Doc. 20 at 3; Doc. 15 at 8) On May 7, 2018, CPF funded $8.2 million of exit financing as contemplated under the Plan. (Doc. 20 at 4) Section 8.9 of the Plan allowed the debtors to redeem the real property claimed by the liquidating trusts if certain conditions were satisfied. (Doc. 15 at 7) One of the conditions required that the debtors "satisfy all claims against either or both the May and July Debtor estates and the expenses of the [Trustee]," meaning that the claims of all creditors would have to be paid in full before the debtors could redeem their property (Doc. 15 at 8; Doc. 20 at 3)

Pursuant to the terms of the Plan, the Trustee informed the debtors of the deadline by which the debtors needed to satisfy all claims in order to redeem their property under Section 8.9 of the Plan. (Doc. 20 at 4) According to the Appellants, the Trustee informed

---

[1] R.O.I. Properties LLC was appointed as the Trustee for both liquidating trusts on May 7, 2018. (Doc. 15 at 8)

2

the debtors that the payoff amount was approximately $61,012,635.73, and payment was due on August 17, 2018. (Doc. 20 4–5) According to the Appellants, the debtors then tried to negotiate a reduction in the amount due through deferring payments of secured claims and deferring other payments to creditors with the consent of those creditors. (Doc. 20 at 4) While the debtors were negotiating various deferred payments, the Trustee informed the debtors that any settlement would be required to include a payment of approximately $6,380,345.00 in undisputed claims. (Doc. 20 at 5) Through a series of negotiations between the Trustee and the debtors, the Trustee accepted a settlement payment of $1.8 million for the $6,380,345.00 of claims. (Doc. 20 at 5; Doc. 15 at 10)

On August 17, 2018, the Trustee filed a motion with the Bankruptcy Court seeking approval of the $1.8 million settlement. (Doc. 15 at 9) The settlement motion did not address the GBSRP I Property. (Doc. 21 at 6) CPF objected to the settlement motion, and the Bankruptcy Court held a hearing on the motion on August 20, 2018. (Doc. 15 at 9; Doc. 20 at 6) Emerald filed its opposition to the settlement motion after the hearing, on August 21, 2018. (Doc. 20 at 6) On August 22, 2018, the Bankruptcy Court issued a signed minute entry entering its ruling in favor of the settlement motion; on August 23, 2018, the Bankruptcy Court issued an order (together with the signed minute entry, the "Settlement Order") granting the settlement motion. (Doc. 15 at 9; Doc. 20 at 6)

The transaction contemplated by the Settlement Order closed on August 24, 2018. (Doc. 15 at 10) On that date, the debtors transferred approximately $50,608,857.59 to the Trustee, which the Appellees argue was sufficient to pay all of the outstanding claims against the debtors in full. (Doc. 15 at 10) As a result of the settlement payment, the debtors were able to retain all of the property held in their respective liquidating trust. (Doc. 15 at 10) The Trustee also transferred the GBSRP I Property to the debtors, with the intention that the debtors negotiate with Emerald for the transfer of the property pursuant to Section 6.7 of the Plan. (Doc. 21 at 6–7) Also on August 24, 2018, the Trustee transferred payment to various creditors of the debtors to satisfy their claims. (Doc. 15 at 10)

On that same day, CPF filed an application for a temporary restraining order and an emergency motion for a stay of the Settlement Order. (Doc. 15 at 10–11) Emerald filed a joinder to CPF's motion to stay and filed a separate motion for clarification[2] of the Settlement Order. (Doc. 15 at 11–12) On August 27, 2018, after a telephonic hearing, the Bankruptcy Court denied CPF's request for a temporary restraining order to prevent the closing of the Section 8.9 redemption transaction. (Doc. 15 at 12) The Bankruptcy Court granted Emerald's request for a temporary restraining order staying the Settlement Order's impact on the GBSRP I Property.[3] (Doc. 21 at 8)

Emerald initiated this appeal seeking enforcement of Section 6.7 of the Plan; specifically, Emerald wants the GBSRP I Property returned to the Trustee so that the Trustee can transfer the property to Emerald. (Doc. 21 at 8) CPF initiated this appeal seeking reversal of the Settlement Order. (Doc. 20 at 15) The Appellees filed a notice seeking to have Emerald's appeal transferred to this Court and for CPF's appeal to be consolidated with Emerald's appeal. (Doc. 21 at 8) Emerald's appeal was transferred to the Court on December 6, 2018, and CPF's appeal was transferred to the Court on January 3, 2019. (Docs. 1, 12) The Appellees filed the Motion seeking dismissal of both appeals. (Doc. 15)

**II.  Analysis**

The Appellees seek dismissal of this appeal, arguing (i) the Appellants lack standing to bring this appeal; (ii) this appeal is an impermissible attack on the Plan; and (iii) the appeal is equitably moot. (Doc. 15 at 2) Each issue will be addressed in turn.

A. <u>Appellant Standing</u>

To have standing to appeal a bankruptcy order, an "appellant must be a 'person aggrieved' by the bankruptcy court's order." *In re A.S. Acquisition Corp.*, 56 F. App'x 415, 416 (9th Cir. 2003) (citing *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir.1999)). "An

---

[2] On October 18, 2018, the Bankruptcy Court held a hearing on Emerald's motion for clarification, and the Bankruptcy Court issued an order denying Emerald's motion for clarification on November 21, 2018. (Doc. 21 at 8)
[3] On November 30, 2018, the Bankruptcy Court dissolved the temporary restraining order. (Doc. 21 at 8)

4

appellant is aggrieved if 'directly and adversely affected pecuniarily by an order of the bankruptcy court'; in other words, the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." *A.S. Acquisition Corp.*, 56 F. App'x at 416 (citing *Fondiller v. Robertson*, 707 F.2d 441, 442 (9th Cir.1983)).

The Appellees argue that the Appellants lack standing to bring this appeal because the Appellants were not party to the Settlement Order and were not adversely impacted by the Settlement Order. (Doc. 15 at 13) Specifically, the Appellees argue that CPF's claims were paid in full under the Plan, and Emerald's interests were not impacted by the Settlement Order. (Doc. 15 at 13) In response, Emerald argues that it was adversely impacted by the Settlement Order because (i) Emerald did not received the "GBSRP I Property" promised under the Plan, and (ii) the Plan contemplated that Emerald and the Trustee would negotiate other terms related to an "Emerald Equities Letter Agreement," including but not limited to the dismissal of a separate lawsuit before the Maricopa County Superior Court. (Doc. 17-1 at 46–47) CPF argues that its interests were adversely impacted by the Settlement Order because CPF paid $8.2 million for the right to bid on the property held in the liquidating trusts in the event that all claims were not satisfied, but it was not given the opportunity to do so. (Doc. 20 at 13–15)

The Court finds that the Settlement Order did not detrimentally impact any of Emerald's pecuniary interests. While the Plan states that the Trustee should have transferred the GBSRP I Property to Emerald, the Court notes that Emerald never argues that the transfer of the GBSRP I Property to it is unfeasible. (Doc. 17-1 at 46–48) Instead, Emerald argues that it bargained for the right to negotiate with the Trustee, and not the parties that now hold the Trustee's interests as a result of the Settlement Order. (Doc. 21 at 11) Emerald has failed to provide a persuasive argument for how negotiating with the debtors instead of the Trustee impacts its pecuniary interests. (Doc. 21 at 9) It is the Court's understanding that Emerald will ultimately receive the same benefits under the Plan regardless of the Settlement Order. (Doc. 21 at 8, stating Emerald "does not dispute the Bankruptcy Court's holdings that the Section 6.7 obligations run with the GBSRP I

Property.") Accordingly, the Court finds that Emerald lacks appellate standing to bring this appeal, as its pecuniary interests were not directly or adversely impacted by the Settlement Order. The Court will dismiss Emerald from this case for lack of standing and only address CPF's arguments moving forward.

The Court notes that CPF never challenges the argument that its claims were paid in full. (Doc. 26 at 2) CPF's injury was that it was not provided with the opportunity to credit bid for certain property that technically should have been auctioned under the terms of the Plan due to the Appellees' failure to pay off all claims as required by Section 8.9 of the Plan. (Doc. 20 at 13–14; Doc. 17-1 at 6) CPF argues, and the Appellees do not vigorously dispute,[4] that the Settlement Order delayed certain payments to third-party creditors that may have otherwise resulted in those claims not being paid, thus failing to trigger the auction and bidding procedure bargained for by CPF in Section 8.9 of the Plan. (Doc. 20 at 3) Thus, under the Plan, the Court must find that CPF suffered an injury when its right to bid on the real properties held by the liquidating trusts was stripped by the Settlement Order. (Doc. 26 at 7, stating "It is true that the Settlement Order prevented CPF from obtaining a massive windfall in the form of a credit bid on the property of the July Estate.") Therefore, the Court must find that CPF has standing to bring this appeal because its rights were detrimentally impacted by the Settlement Order.

B. Collateral Attack on Confirmed Plan

"Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect." *Smith v. Charter Commc'ns, Inc. (St. Louis)*, 467 F. App'x 742, 743 (9th Cir. 2012) (citing *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995)). Where a "creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order, it cannot later complain about a certain provision contained in a confirmed plan" by bringing a collateral attack in another court. *Smith*, 467 F. App'x at 743 (citing *In re Pardee*, 193 F.3d 1083, 1086 (9th

---

[4] The Appellees' reply states that CPF's claim is "baseless" without providing any further explanation for whether all claims originally considered under the Plan were paid in full without the help of the Settlement Order. (Doc. 26 at 7)

6

Cir.1999)). Furthermore, when a stay of an order confirming a reorganization plan has not been obtained and the plan has been consummated, appeals seeking to attack the confirmed plan may be precluded. *In re Clarke*, 98 B.R. 979, 980 (B.A.P. 9th Cir. 1989).

The Appellees argue that this appeal is an impermissible attack on the Plan. (Doc. 15 at 14) Specifically, the Appellees argue that the Settlement Order only set in motion the terms of Section 8.9 of the Plan by allowing the debtors to exercise their redemption option. (Doc. 15 at 14) The Appellees also argue that the Appellants did not object to or appeal the Confirmation Order; thus, this appeal is moot. (Doc. 15 at 14) In response, CPF argues that this appeal challenges the terms of the Settlement Order that are inconsistent with and independent of the Plan. (Doc. 20 at 8)

The Court finds that the terms of the Settlement Order clearly changed some of the terms present in the Plan that impact CPF's pecuniary interests, even if the Settlement Order was not intended to change the relief granted under the Plan. It is clear to the Court that CPF is seeking to reverse the changes that the Settlement Order made to the implementation of the Plan, and, without the Settlement Order's changes, CPF would not have anything to appeal under the terms of the Plan. Specifically, CPF states that it is seeking relief in the form of reversing approval of the Settlement Order and remanding this case back to Bankruptcy Court "for further proceedings consistent with the confirmed Plan and Confirmation Order." (Doc. 20 at 15) Accordingly, the Court finds that CPF's appeal is not an impermissible attack on the Plan.

C. Equitable Mootness

Equitable mootness is a doctrine through which a court elects not to reach the merits of a bankruptcy appeal. *In re Transwest Resort Properties, Inc.*, 801 F.3d 1161, 1167 (9th Cir. 2015). "An appeal is equitably moot if the case presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order." *Id*. (citing *In re Mortgages Ltd.*, 771 F.3d 1211, 1215 (9th Cir. 2014)); *Bank of New York Mellon v. Watt*, 867 F.3d 1155, 1160 (9th Cir. 2017) (stating "equitable mootness may apply when bankruptcy cases 'present transactions that

are so complex or difficult to unwind.'"). To determine whether a case is equitably moot, a court considers (1) whether a stay was sought; (2) if a stay was sought and not gained, whether substantial consummation of the plan has occurred; (3) what effect a remedy would have on third parties not before the court; and (4) whether the bankruptcy court can fashion effective and equitable relief. *Bank of New York Mellon*, 867 F.3d at 1160 (citing *Transwest*, 801 F.3d at 1167–68 (9th Cir. 2015)); *In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir. 2012).

The Appellees argue that this appeal should be dismissed because the Appellants failed to seek a stay of the Confirmation Order prior to the effective date of the Plan. (Doc. 15 at 15) Furthermore, the Appellees argue that this appeal is equitably moot because, per the remaining *Thorpe* factors, the transactions effectuated by the implementation of the Plan are too difficult to unwind given that (i) the Plan has been substantially consummated, (ii) retrieving payments from third-party creditors would harm those parties, and (iii) the Court would be unable to craft an effective equitable remedy in this case. (Doc. 15 at 15–17) In response, CPF argues that it did not need to seek a stay of the Confirmation Order to be able to appeal the Settlement Order. (Doc. 20 at 10) Instead, CPF asserts that its motion to seek a stay of the Settlement Order, which was ultimately denied, is sufficient to satisfy the *Thorpe* test. (Doc. 20 at 9–10) Additionally, CPF argues that this appeal is not equitably moot because the Court could fashion some relief requiring the Bankruptcy Court to administer the Plan by its terms. (Doc. 20 at 11–12)

It is undisputed that the Appellants sought a stay of the Settlement Order as evidenced by CPF's "Emergency Motion to Enforce Plan" and other objections filed with the Bankruptcy Court. (Doc. 20 at 6) The Appellees' argument that CPF's appeal fails because CPF did not object to confirmation is misguided because CPF isn't objecting to the terms of the Plan, only to the terms of the Settlement Order that altered the terms of the Plan. Accordingly, the Court finds that the first *Thorpe* factor weighs against finding this appeal is moot, as it is clear that CPF sought the requisite stay of the Settlement Order before bringing this appeal.

The remaining *Thorpe* factors weigh in favor of finding that this appeal is equitably moot. The term "substantial consummation" is defined in the Bankruptcy Code as: (i) transfer of all or substantially all of the property proposed by the plan to be transferred, (ii) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (iii) commencement of distribution under the plan. 11 U.S.C. § 1101(2); *Transwest*, 801 F.3d at 1168. The Plan was confirmed on May 1, 2018 and went effective on May 7, 2018. (Doc. 15 at 7) The Settlement Order was approved by the Bankruptcy Court on August 23, 2018, and the transaction effectuated as a result of the Settlement Order closed on August 24, 2018. (Doc. 15 at 9) The remedy requested of the Court is to reverse the Settlement Order entered by the Bankruptcy Court more than one year ago. The debtors' real property was transferred to the liquidating trusts on the effective date of the Plan, and the GBSRP I Property was transferred to the debtors around August 24, 2018. (Doc. 15 at 8) It is undisputed that distributions commenced under the Plan, as evidenced by the fact that CPF's claims were paid in full and several third-party creditors had their claims paid in full in August 2018.[5] (Doc. 15 at 3) Ultimately, the Court finds that the Plan has been substantially consummated per the terms of the Settlement Order.

Next, the Court must evaluate "whether modification of the plan of reorganization would bear unduly on the innocent." *Thorpe*, 677 F.3d at 882. It is undisputed that reversing and remanding this case would result in an unknown number of third-party creditors having to return funds transferred to them nearly one year ago, which is the most significant harm that must be balanced against CPF's injury. The Court must consider the interests of these third-party creditors who received payment for their claims around August 24, 2018, because most, if any, of these parties are not party to this appeal. (Doc. 15 at 10–11); *Thorpe*, 677 F.3d at 882 (stating "the question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do

---

[5] The Motion states that all undisputed claims have been paid in full, and the Trustee currently holds the funds necessary to pay all remaining disputed claims. (Doc. 15 at 3)

so in a way that does not affect third party interests to such an extent that the change is inequitable"). The interests of these numerous parties is significant in the Court's finding that it would be very difficult and highly inequitable to claw back the funds transferred to these entities. Therefore, the Court finds that this factor weighs heavily in favor of finding that this appeal is equitably moot.

Finally, the Court finds it nearly impossible to conceive of a form of relief in this case that would be an efficient and equitable solution to CPF's harm without completely unraveling the Plan as implemented and causing significantly more harm and damage in its aftermath. The Appellants have not set forth any persuasive arguments for how unraveling the Settlement Order furthers any balance of the equitable interests in this case. Thus, the Court's inability to fashion efficient equitable relief weighs in favor of finding that this appeal is equitably moot. Therefore, the Court finds that it cannot craft equitable relief in this case, and this appeal is equitably moot.

Accordingly,

**IT IS ORDERED** that Appellees' Motion to Dismiss (Doc. 15) is granted;

**IT IS FURTHER ORDERED** that ROI Properties LLC's Motion to Dismiss/Joinder in Motion to Dismiss Appeal as Moot and For Lack of Appellate Standing (Doc. 22) is granted;

**IT IS FURTHER ORDERED** that Emerald Equities, LLC shall be dismissed from this case for lack of standing; and

**IT IS FURTHER ORDERED** that the Clerk of Court should terminate this case and enter judgment accordingly.

Dated this 26th day of July, 2019.

Honorable Steven P. Logan
United States District Judge